UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  21mj02960 O'Sullivan

UNITED STATES OF AMERICA

v.

EDGAR JESUS HURTADO PALEAZ,

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?   __ Yes   X  No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? __ Yes   X  No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?   __ Yes   X  No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

BY:   */s/ Jonathan Bailyn*
Jonathan R. Bailyn
Assistant United States Attorney
Southern District of Florida
Court ID No.: A5502602
99 Northeast 4th Street
Miami, Florida 33132-2111
Telephone: (305) 961-9071
E-mail: jonathan.bailyn@usdoj.gov

AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.   21mj02960 O'Sullivan |
| EDGAR JESUS HURTADO PELAEZ, | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

FILED BY ____ER____ D.C.
May 17, 2021
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___October 20, 2020___ in the county of ___Miami-Dade___ in the ___Southern___ District of ___Florida___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 554(a) | Smuggling goods from the United States. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

HSI Special Agent Elvis Corrales
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time.

Date: __5/16/2021__

_____
*Judge's signature*

City and state: ___Miami, Florida___   Chief U.S. Magistrate Judge John J. O'Sullivan
*Printed name and title*

21mj02960 O'Sullivan

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent ELVIS CORRALES, being duly sworn, depose and affirm the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Miami, Florida field office. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States authorized to conduct investigations of or to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1), including but not limited to offenses involving the smuggling, trafficking, exportation, importation, receiving, concealment, buying, selling and otherwise dealing in weapons and munitions, as enumerated in Title 18, United States Code, Section 2516(1)(e).

2. I have been a Special Agent with HSI since 2006. I have participated in and directed criminal investigations involving the illegal exportation of weapons and military and defense articles from the United States. I am a graduate of the Federal Law Enforcement Training Center, where I was trained in, among other topics, criminal investigative techniques and export-control investigations. I have received formal training and on-the-job experience in the laws and regulations relating to weapons smuggling and international arms trafficking. As a result of my training and experience, I have knowledge of the means and methods used by weapon traffickers and weapon-trafficking organizations to communicate with each other, to purchase, transport, store, and distribute weapons, and to conceal profits generated from those transactions.

3. I submit this Affidavit in support of a criminal complaint charging Edgar Jesus Hurtado Pelaez ("HURTADO") with violating Title 18, United States Code, Section 554(a), by fraudulently and knowingly exporting or attempting to export and send from the United States to Costa Rica firearm parts, components, and accessories, contrary to any law and regulation of the United States, that is, Title 13, United States Code, Section 305(a)(1) and Title 15, Code of Federal Regulations, Section 758.1(b)(2).

4. I base the information in this Affidavit on my personal knowledge, as well as documents and information I received from other law enforcement officials involved in this investigation. I submit this Affidavit for the limited purpose of establishing probable cause in support of the criminal complaint. This Affidavit does not contain every fact I know about this investigation. Rather, I have included only the facts necessary to establish probable for the criminal complaint.

## PROBABLE CAUSE

### Customs Declaration Requirement

5. A person must file an Electronic Export Information ("EEI"), previously referred to as a Shipper's Export Declaration ("SED"), with Customs and Border Protection ("CBP") "[f]or all exports subject to the EAR [Export Administration Regulations] that require submission of a license application, regardless of value or destination." 15 C.F.R. § 758.1(b)(2). A person violates Title 13, United States Code, Section 305(a)(1) if he knowingly fails to file or submits a false or misleading EEI.

6. The EAR requires submission of a license application for any item if (i) the item is controlled for a reason listed in the Export Control Classification Number ("ECCN") of the Commerce Control List ("CCL"), and (ii) export to the country of destination requires a license

2

for the control reason listed on the EAR Country Chart. 15 C.F.R. § 736.2(b)(1)(i)–(ii); *see also* 15 C.F.R. § 764.2(a).

7. Semi-automatic rifles of .50 caliber or less, such as model-type AR-15s and AK-47s, are listed in the CCL and have an ECCN of 0A501. *See* CCL, 15 C.F.R. pt. 774, supp. no. 1, ¶ 0A501.a. This ECCN also includes "detachable magazines," parts and "components" that are "specially designed" for semi-automatic rifles, such as triggers, hammers, bolts, barrels, and cylinders, as well as pistol grips or buttstocks that "contain fire control 'parts' or 'components.'" 15 C.F.R. pt. 774, supp. no. 1, ¶ 0A501.c, .d & .x.

8. The control reasons for ECCN 0A501 include "NS" (national security), "RS" (regional stability), and "FC" (firearms conventions). *See id.* tbl. 1. In the EAR Country Chart, export to Costa Rica requires a license for control reasons national security, regional stability, and firearms convention. *See* 15 C.F.R. pt. 738, supp. no. 1.

9. Because semi-automatic rifles, their parts, and components (i) are controlled for reasons listed in the ECCN, and because (ii) their export to Costa Rica requires a license for the reasons listed on the EAR Country Chart, a person who exports semi-automatic rifles, their parts, or components to Costa Rica must apply for and receive a license from the U.S. government. And, because a person who exports semi-automatic rifles, their parts, or components to Costa Rica must apply for and receive a license from the U.S. government, that person must also file an EEI with CBP. In normal business, a person who exports goods through a common or contract carrier notifies that carrier of the goods he intends to export, and that common or contract carrier files the EEI through written authorization. *See* 15 C.F.R. § 30.3(c)(2)(ii). But if that person does not notify the common or contract carrier or otherwise authorize an agent to file the EEI, then he must file the EEI himself. *See id.* § 30.3(c)(1)(i).

3

**Attempted Export of Semi-Automatic Rifle Parts and Components**

10. ROJU'S IMPORTS was incorporated by "F.B." in the State of Florida on November 13, 2017. F.B. is married to "M.H.U." M.H.U. is HURTADO's daughter.

11. The Articles of Incorporation for ROJU's IMPORTS state that its business purpose is the "PURCHASE OF GOODS AND EXPORT TO COSTA RICA." Since its incorporation, ROJU'S IMPORTS has routinely sent shipments to Costa Rica through different freight forwarding companies.

12. On October 9, 2020, AR15Discounts.com, an online retailer of semi-automatic rifle parts, kits, and accessories, notified HSI that Roju's Imports had purchased firearm parts which were to be delivered to M.H.U. at 8004 NW 154th Street, No. 569, Miami Lakes, FL 330138. This delivery address is a mailbox at a UPS store (the "UPS Mailbox.").

13. On October 15, 2020, UPS notified HSI that the shipment of three packages from AR15Discounts.com was being held at the UPS Customer Center in Hialeah, Florida. HSI agents, including myself, reported to the UPS Customer Center and watched UPS security personnel open the three packages. Inside the packages, UPS found ninety-five (95) semi-automatic rifle parts and components, including twenty-six (26) upper receivers, thirty (30) bolt carrier groups, fifteen (15) lower build kits, sixteen (16) forward assist with dust cover kits, and eight (8) dust/port door kits. When assembled, these firearm parts can complete approximately sixteen (16) AR-15 rifles.

14. On October 18, 2020, HSI applied for and secured a tracking warrant for the three packages of firearm parts and HSI, along with other federal law enforcement agencies, replaced the firearm parts with sham. The next day, October 19, 2020, UPS returned the three packages containing sham to the UPS Mailbox.

15. On October 20, 2020, HURTADO picked up the three packages from the UPS

4

Mailbox and put them in his car. HSI agents approached HURTADO and asked to speak with him. HURTADO agreed to speak with HSI agents at the Special Agent in Charge ("SAC") office in Miami, Florida.

16. At the SAC office, law enforcement read HURTADO his *Miranda* rights, which he waived in writing. HURTADO told the agents that he had been picking up packages that his daughter, M.H.U., had ordered. HURTADO said that F.B. and M.H.U. had traveled to Costa Rica and that, while they were there, HURTADO oversaw the export of packages to F.B. and M.H.U. HURTADO said that M.H.U. ordered packages to the UPS Mailbox and to another UPS store located within a Wal-Mart. HURTADO said he routinely picked up packages for M.H.U. from these locations.

17. HURTADO said that he exported semi-automatic rifle parts and components to Costa Rica by sea containers at least every other month. To do so, HURTADO said he delivered packages containing the semi-automatic rifle parts and components to "A.J.L.," who owns a trucking company and who would deliver the packages to freight forwarders.

18. During the interview, HURTADO agreed to allow HSI agents to search his car. Inside his car, agents saw an additional five packages. Agents opened the packages and found within them 328 semi-automatic rifle parts and components, including twenty (20) barrels, twenty (20) upper receivers, forty (40) rifle magazines, forty (40) rail guards, sixteen (16) butt stocks with buffer tubes, one hundred and nine (109) lower receivers, twenty (20) grips with trigger kits, sixty-three (63) screws, and twenty (20) flash guards or suppressors. When assembled, these firearm parts can complete approximate twenty (20) semi-automatic rifles.

19. HURTADO also agreed to allow HSI agents to search his mobile phone. In the phone, HSI agents found, among other things, photographs of shipping boxes containing semi-

5

automatic rifle parts and components. In one photograph, HURTADO is holding a semi-automatic lower receiver, with his distinguishing forearm tattoo visible.

20. On October 20, 2020, HSI agents spoke with A.J.L., the owner of the trucking company to whom HURTADO said he delivered the packages, at AJL Deliveries & Pickup, his place of business. A.J.L. told the HSI agents that he was expecting HURTADO to drop off shipments to him. A.J.L. said that F.B. was his client and that HURTADO frequently brought A.J.L. packages to be shipped to Costa Rica on behalf of F.B. A.J.L. said that HURTADO never told A.J.L. what his packages contained, and that he believed he was shipping commercial merchandise for F.B., such as perfumes. A.J.L. said that F.B. directs him to deliver packages to freight forwarders.

21. On May 14, 2021, HURTADO attempted to fly from Miami International Airport to Medellin, Colombia. CBP officers brought HURTADO to a secondary inspection area and I and other law enforcement agents arrived to interview HURTADO.

22. Law enforcement read HURTADO his *Miranda* rights, which he waived in writing, and began questioning him further about his exporting activities. During the interview, HURTADO admitted that he knew that exporters, including himself, were required to declare items that were to be exported outside the country. HURTADO explained that he exported many items to his family members who lived in Colombia over the last three years. Specifically, HURTADO said that he has "to put it down if it's jeans, pampers, or household items" and that he has to "put everything down in detail." I then asked HURTADO if he ever declared the firearm parts that he delivered to AJL Deliveries & Pickup for export. HURTADO said he did not, that he trusted A.J.L., that he and A.J.L. were friends, and that A.J.L. should take care of that.

6

23. In my training and experience, I believe HURTADO's statements regarding trusting A.J.L. to declare the items on his behalf are self-serving for two reasons. First, according to A.J.L., HURTADO never told him what his packages contained. Therefore A.J.L. would be unable to file an SED or EEI declaring the contents of the export. Furthermore, pursuant to the declaration regulations, HURTADO was required to provide A.J.L. "with accurate and timely export information necessary to file the EEI." 15 C.F.R. § 30.3(c)(1)(ii). Thus, even if HURATDO had authorized A.J.L. to file the SED or EEI on his behalf, HURTADO failed to properly discharge his duties in violation of law, as described above. Second, HSI has researched if any of the aforementioned individuals or entities applied for export licenses or filed any SEDs or EEIs with CBP for export-controlled munitions, filings or licenses that would necessarily include the names of the individuals or entities. As of today, they have not, which shows that the firearms parts have never been declared.

[space intentionally left blank]

## CONCLUSION

24. Based on my training and experience, and further supported by the facts in this Affidavit, I respectfully submit that there is probable cause to believe that HURTADO violated Title 18, United States Code, Section 554(a), by fraudulently and knowingly exporting or attempting to export and send from the United States to Costa Rica firearm parts, components, and accessories, contrary to any law and regulation of the United States, that is, Title 13, United States Code, Section 305(a)(1), and Title 15, Code of Federal Regulations, Section 758.1(b)(2).

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
SPECIAL AGENT ELVIS CORRALES
HOMELAND SECURITY INVESTIGATIONS

Attested to by the applicant in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 by FaceTime this 16th day of May 2021.

_____
HON. JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE

8